**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KENNETH HUGGINS, SR., et al.,** | : | **CIVIL ACTION** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **COATESVILLE AREA** | : | |
| **SCHOOL DISTRICT, et al.,** | : | |
| **Defendants** | : | **NO. 07-4917** |

**M E M O R A N D U M**

PRATTER, J.                                                        AUGUST 27, 2008

**INTRODUCTION**

Plaintiff Kenneth Huggins, Sr., an African-American, and his wife, Monica Huggins, have sued the Coatesville Area School District (the "School District"), Maria Walker, Richard Como, Frank D'Angelo, and Pedro Quinones.[1]  Mr. Huggins brought claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 et seq. ("Title VII"), the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. §§ 951-953 (the "PHRA"), and 42 U.S.C. § 1983, alleging racial discrimination and retaliation stemming from events that occurred during the course of his employment as a custodian for the School District.  Mr. Huggins also asserts pendant state law claims, including a claim for intentional infliction of emotional distress and a "malicious acts" claim.  Mrs. Huggins asserts a claim for loss of consortium.

Specifically, Mr. Huggins contends that defendant Dr. Walker made racist remarks to him in the workplace, and, after he reported the remarks to School Board officials, that he was subject to retaliation by Dr. Walker and the School District when he was fired.

The School District and all of the individually-named defendants move to dismiss all of

_____

[1] Pedro Quinones was incorrectly identified as "Pedro Quiles"in the Complaint.

the Huggins's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.   The

Plaintiffs oppose the motion.  For the reasons discussed below, the motion will be granted in part

and denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND

The Coatesville Area School District employed Mr. Huggins starting in March 1999, and,

from November 2003 until the events that eventually led to this law suit, Mr. Huggins served as a

custodian at the District's Gordon Elementary School.

Mr. Huggins alleges that some time after he began working at Gordon Elementary

School, Dr. Walker, the school's principal, asked Mr. Huggins if his "bomb" – apparently

referring to his Lincoln Town Car – was parked in the school parking lot.  (Compl. ¶ 19.)  At that

time, Mr. Huggins told Dr. Walker that her comment was "classist" and that it offended him.

According to Mr. Huggins, Dr. Walker laughed and walked away.  (Compl. ¶ 20.)  Mr. Huggins

alleges that this comment was but one of many class-based, derogatory and discriminatory

statements made by Dr. Walker (Compl. ¶ 21), which led him to fear discriminatory treatment

and retaliation from her, such that he sought to avoid contact with her whenever possible.

(Compl. ¶ 21.)

Mr. Huggins alleges that on or about September 17, 2005, he and some female teachers,

including Ms. Ashton, Ms. Grubb, and Ms. Ellen Berger,[2] were having an "after-school hours"

conversation regarding a bag of potato chips in a school classroom.  (Compl. ¶ 23.)  According to

Mr. Huggins, he walked into the classroom and jokingly stated, "Ms. Grubb, you were suppose to

buy me a hoagie," to which Ms. Grubb responded, "oh, Ken, I'm not going to buy you a hoagie."

---

[2] The Complaint did not provide Ms. Ashton's or Ms. Grubb's first names.

(Compl. ¶ 23.)  Mr. Huggins also told Ms. Berger "that she had to buy dinner."  (Compl. ¶ 24.)
Mr. Huggins claims that all of the participants in the conversation understood that they were just
joking and having fun.  (Compl. ¶ 24.)

However, Mr. Huggins claims that Dr. Walker overheard the conversation, took his and
the teachers' comments out of context, and initiated an investigation to determine whether Mr.
Huggins had sexually harassed these female teachers.  (Compl. ¶ 25.)  Mr. Huggins alleges that
Dr. Walker and other School District officials interrogated the female teachers present that
evening, but that all of them denied that Mr. Huggins had sexually harassed them.  (Compl. ¶
25.)

On November 14, 2005, Dr. Walker approached Mr. Huggins in the hallway of the school
and informed him that he had forgotten to check the girls' lavatories.  Mr. Huggins, who was
emptying trash at the time, stated that he must have forgotten, apologized to Dr. Walker, and
continued his then present task.  When Mr. Huggins left the immediate area, Dr. Walker
allegedly shouted "Hey Boy with the trash bag, come here!"  (Compl. ¶ 26.)  Mr. Huggins was
"stunned."  He composed himself and asked Dr. Walker to repeat what she had just said.  Mr.
Huggins alleges that Dr. Walker replied, "you heard me, I said, 'Hey Boy with the trash bag,
come here!'"  (Compl. ¶ 26.)[3]

Mr. Huggins claims that he was so distraught that he informed other individuals at the
school about the incident, and that these individuals recommended that Mr. Huggins report the
incident to Dr. H. Major Poteat, the Assistant Superintendent of the School District.  (Compl. ¶

---

[3] Mr. Huggins alleges that use of the word "boy," when referring to an adult, African-
American male, is racist, offensive, and dis-empowering.  (Compl. ¶ 27.)

3

28.)  When Mr. Huggins discussed the incident with Dr. Poteat, Dr. Poteat stated that Dr.

Walker's comments were "wrong and racial," and he promised to investigate.  (Compl. ¶ 29.)

Mr. Huggins further alleges that approximately one week after the "trash" incident, two

female teachers told Mr. Huggins that Dr. Walker had summoned them to her office and

questioned them about Mr. Huggins's conduct and performance.  Mr. Huggins states that Dr.

Walker's inquiries were along the lines of "digging up dirt" on him.  (Compl. ¶ 30.)  Some days

later, several teachers received email communications directing them to meet with an investigator

to discuss Mr. Huggins's conduct.  (Compl. ¶ 31.)[4]  Mr. Huggins alleges that all of the teachers

questioned denied being sexually harassed by him.  (Compl. ¶ 31.)

On or about December 22, 2005, Mr. Huggins was summoned via intercom to the main

office of the school.  (Compl. ¶ 32.)  As he approached the office, Mr. Huggins observed two

police officers, who informed him that they were there to escort him off the premises.  Defendant

Frank D'Angelo, the Maintenance Supervisor, and defendant Pedro Quinones, second in

command to Mr. D'Angelo, took Mr. Huggins and the police officers into a conference room

where they directed Mr. Huggins to surrender his keys.  In addition, they informed Mr. Huggins

that there were allegations against him for (1) looking at a teacher's "butt" and "licking his lips";

and (2) looking at two young girls – students at the school – and "licking his lips."  (Compl. ¶

33.)  Mr. Huggins alleges that he left the school in disbelief.  (Compl. ¶ 34.)

On January 10, 2006, Mr. Quinones directed Mr. Huggins to report to the school

administration building to pick up a letter formally terminating his employment.  (Compl. ¶ 34.)

---

[4] The Complaint does not specify whether Dr. Walker sent these emails or whether they
were sent by another School District official or employee.

4

Following his termination, Mr. Huggins and the School Board  attempted to resolve this dispute by participating in arbitration proceedings.  Mr. Huggins alleges that several fact-finding conferences and arbitration hearings with the American Arbitration Association were held in September 2006 and March 2007 and, as a result of these proceedings, the School District reinstated him as a custodian.  (Compl. ¶ 36.)  However, Mr. Huggins claims that the School District refused to assign him to his previous shifts at the Gordon School.  He alleges that he was placed on the bottom of the list with respect to scheduling and other duties and responsibilities, and was given more work than his white co-workers.  He also alleges that he was assigned to work at a different school and a less desirable shift (Compl. ¶¶ 40-41), and was unfairly disciplined after calling out sick (Compl. ¶ 42).

On or about January 31, 2006, Mr. Huggins filed a charge with the Pennsylvania Human Relations Commission ("PHRC"), and initiated this suit on November 21, 2007, when he filed a seven-count complaint in federal court.  In this suit, Mr. Huggins alleges that the School District and the individually-named Defendants discriminated against him on the basis of his race. (Compl. ¶ 35.)  He also alleges that the School Board and Dr. Walker retaliated against him because of his race.  (Compl. ¶¶ 30, 47.)   Mr. Huggins alleges claims of race discrimination in violation of  Title VII (Count I) and the PHRA (Count II), a claim of "malicious acts" (Count III), a claim alleging a violation of his constitutional rights under § 1983 (Count IV), a separate claim alleging a violation of his "equal protection" rights under § 1983 (Count V), and a claim of intentional infliction of emotional distress (Count VI).  Finally, Mrs. Huggins asserts a claim for loss of consortium (Count VII).

Defendants have moved to dismiss all of the Plaintiffs' claims.  They argue that (1) Mr.

Huggins's Complaint fails to state a claim against the individual Defendants; (2) the Complaint fails to establish a prima facie case of race discrimination or retaliation under Title VII and the PHRA; (3) Mr. Huggins's § 1983 claims do not allege a specific federal right and fail to allege that the Defendants acted in accordance with a policy or custom of the School District, thereby depriving him of a federally protected right; and (4) the state law claims are insufficiently pleaded and fail as a matter of law.

**LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley, 355 U.S. at 47). While a complaint need not contain detailed factual allegations, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65. Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 1965.

In making such a determination, the Court "must only consider those facts alleged in the complaint and accept all of those allegations as true." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Twombly, 127 S. Ct. at 1965 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"). The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the

6

light most favorable to the non-moving party.  Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). The Court, however, need not accept as true "unsupported conclusions and unwarranted inferences," Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (citing City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal conclusions," Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

To evaluate a motion to dismiss, the Court may consider the allegations contained in the complaint, exhibits attached to the complaint, matters of public record and records of which the Court may take judicial notice.  See Tellabs, Inc. v. Makor Issues & Rts., 127 S. Ct. 2499, 2509 (2007); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

## DISCUSSION

### I.   MR. HUGGINS'S ALLEGATIONS AGAINST DEFENDANTS RICHARD COMO, FRANK D'ANGELO, AND PEDRO QUINONES

The Complaint will be dismissed as to Messrs. Como, D'Angelo and Quinones in its entirety because Mr. Huggins fails to allege that any of these individuals discriminated against him, aided or abetted any race discrimination or retaliation, or that they participated in any wrongdoing whatsoever.[5]

In his Complaint, Mr. Huggins alleges that Dr. Walker harassed and discriminated against him on the basis of his race.  (Compl. ¶ 18.)  Although he later alleges that the School District and "its upper management personnel" discriminated against him, he offers no factual support for

---

[5] The sufficiency of Mr. Huggins's specific allegations against Dr. Walker will be discussed separately.

the allegations of discrimination by any of the named individual defendants other than Dr.

Walker.  Mr. Huggins merely alleges that Messrs. D'Angelo and Quinones escorted him into a

conference room on December 22, 2005, where they asked him to turn in his keys.  Mr. Huggins

further alleges that on January 10, 2006, Mr. Quinones asked him to report to the Administration

Building to pick up a letter formally terminating his employment.  Other than these benign

allegations of ministerial acts, Messrs. D'Angelo's and Quinones's names are not referenced in

the Complaint.  Moreover, other than identifying Mr. Como as an employee of the School

District (Compl. ¶ 11), the Complaint lacks any reference to him and does not state any

allegations against him.[6]  For these reasons, Plaintiffs' Complaint, and all of the claims stated

therein, will be dismissed as to defendants Richard Como, Frank D'Angelo, and Pedro

Quinones.[7]

---

[6] In his response to the defense motion, Mr. Huggins claims that Messrs. Como, D'Angelo and Quinones aided Dr. Walker's leading of a "witch hunt . . . to falsely accuse" him. (Pl. Resp. 9.)  However, as explained above, other than noting Mr. D'Angelo's and Mr. Quinones's mere presence during one particular meeting with Mr. Huggins, and Mr. Quinones's informing Mr. Huggins to pick up his termination letter, the Complaint contains no allegations that any individual defendants (other than Dr. Walker) participated in any "witch hunt" or otherwise aided or abetted any discrimination.  For purposes of the motion to dismiss, of course, the Court must look at the allegations in the pleading, not the subsequent arguments in the briefs raising arguably new or different "facts."

[7] In addition, Defendants correctly argue that Mr. Huggins's Title VII and PHRA claims against Messrs. Como, D'Angleo and Quinones must be dismissed because Title VII does not provide for claims against an individual who is not the plaintiff's "employer," see Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1077-78 (3rd Cir. 1996) (concluding that Congress did not intend to hold individual employees liable under Title VII); Jones v. School Dist., 19 F. Supp. 2d 414, 417 n.1 (E.D. Pa. 1998) ("The law in this Circuit . . . clearly holds that individual employees cannot be held liable under Title VII."), and, with respect to Mr. Huggins's PHRA claims, because Mr. Huggins did not exhaust his administrative remedies against the individually-named defendants by naming them as defendants or otherwise implicating them in his PHRC charge.

Defendants also raise the "exhaustion" argument in addressing Mr. Huggins's PHRA

## II.   THE TITLE VII AND PHRA CLAIMS

### A.   Mr. Huggins's Title VII and PHRA Claims Against the School Board

Defendants first argue that Mr. Huggins's Title VII and PHRA claims should be dismissed because the Complaint does not allege facts sufficient to establish a prima facie case of race discrimination or retaliation.

This defense argument is misplaced.  At the motion to dismiss phase the Court is required to accept as true all of Mr. Huggins's factual allegations and all inferences arising from those allegations.  However, a plaintiff need not plead a prima facie case of discrimination in order to survive a motion to dismiss because a prima facie case is an evidentiary standard, not a pleading standard.  See Swierkiewicz v. Sorema N. A., 534 U.S. 506, 515 (2002).  Defendants have cited a litany of summary judgment (as opposed to Rule 12(b)(6)) cases that discuss a plaintiff's burden of proof, but they cite no case – and present no serious argument – concerning the insufficiency of a plaintiff's pleadings in general, or Mr. Huggins's allegations in this case.

Reviewing the allegations recited above, Mr. Huggins has alleged that the School Board, through Dr. Walker, discriminated against him on the basis of his race, retaliating against him,

---

claims against Dr. Walker.  The Court discusses Defendants' arguments and the governing the legal principles below (see section II.C. of this Memorandum), and will not repeat the pertinent case law here inasmuch as the Plaintiffs' claims against the other individual defendants will be dismissed on other grounds.  However, applying the same analysis described below, the Court also concludes that no PHRA claim could survive against Messrs. Como, D'Angelo and Quinones because Mr. Huggins's PHRA charge did not name those individual as defendants, nor did it allege any facts that would support a claim against those defendants under the PHRA or otherwise provide those individuals with "notice" that they would be hailed into court to defend themselves against Mr. Huggins's claims.  In short, Mr. Huggins's administrative charge, like his federal Complaint, did not state any claim for relief against these individual Defendants. Accordingly, Mr. Huggins failed to "exhaust" his administrative remedies against Messrs. Como, D'Angelo and Quinones, and he is barred from asserting PHRA claims against those individuals here.

instituting an investigation of sexual misconduct against him based on false pretenses resulting in his termination, and discriminating against him as to the conditions of his employment.  These allegations are sufficient to state a claim of race discrimination and retaliation against the School Board (and Dr. Walker) to survive Defendants' 12(b)(6) motion.  Accordingly, Defendants' motion will be denied as to the Title VII and PHRA claims against the School Board.

**B.      Mr. Huggins's Title VII Claims Against Dr. Walker**

As noted above, Mr. Huggins's allegations against Dr. Walker are sufficient to state claims of race discrimination and retaliation against her.  However, Defendants correctly argue that Title VII does not provide for suits against individuals who are not themselves the "employer."  See Sheridan, 100 F.3d at 1077-78; Jones, 19 F. Supp. 2d at 417 n.1.  Therefore, Mr. Huggins's Title VII claims against Dr. Walker will be dismissed.

**C.      Mr. Huggins's PHRA Claims Against Dr. Walker**

Defendants also argue that Mr. Huggins's PHRA Claims against Dr. Walker must be dismissed because Mr. Huggins failed to exhaust his administrative remedies by failing to name Dr. Walker as a respondent in his PHRC complaint.  Defendants argue that Mr. Huggins is barred from bringing PHRA claims against Dr. Walker now.  Mr. Huggins does not address this argument in his brief in response to the motion to dismiss.

Generally, an employee must exhaust all administrative remedies by filing a charge of discrimination with the appropriate state or federal agency before filing suit under the PHRA (or Title VII).  See, e.g., Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984); Kunwar v. Simco, 135 F. Supp. 2d 649, 653-654 (E.D. Pa. 2001).  In exhausting his administrative remedies, the plaintiff is required to specifically name all persons alleged to have committed acts of

discrimination.  See 43 Pa. Cons. Stat. Ann. § 959 (PHRA's exhaustion requirements); see also

42 U.S.C. § 2000e- 5(f)(1) (Title VII's exhaustion requirements).  "The purpose behind this rule

is to alert the implicated parties and to encourage an informal conciliation process in lieu of

trial." Kunwar v. Simco, 135 F. Supp. 2d at 653 (citing Dreisbach v. Cummins Diesel Engines,

Inc., 848 F. Supp. 593, 595 (E.D. Pa. 1994)).

       However, the Court of Appeals for the Third Circuit has recognized an exception to the

exhaustion requirement under certain circumstances, and has permitted a plaintiff to sue a party

not specifically named in the administrative charge "when the unnamed party received notice and

when there is a shared commonality of interest with the named party."  Schafer v. Bd. of Pub.

Educ., 903 F.2d 243, 252 (3d Cir. 1990); see also Glus v. G.C. Murphy Co., 629 F.2d 248, 251

(3d Cir. 1980) (stating four-part test for exception to exhaustion requirement), vacated on other

grounds, 451 U.S. 935 (1981).[8]  District courts have applied this exception in a variety of

situations to permit suits to go forward, notwithstanding imperfect exhaustion.  In particular,

several district courts within the Third Circuit have found plaintiffs to have exhausted

---

       [8] In Glus, the court of appeals set forth four factors courts should consider in determining
whether a party that the plaintiff did not expressly name in a PHRA or EEOC charge can
nonetheless be named as a party in the subsequent civil suit.  Glus, 562 F.2d at 887-88.  The Glus
factors are: (1) whether the role of the unnamed party could through reasonable effort by the
complainant be ascertained at the time of the filing of the PHRA/EEOC complaint; (2) whether
under the circumstances, the interests of a named party are so similar to the unnamed party's that
for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to
include the unnamed party in the PHRA/EEOC proceedings; (3) whether its absence from the
PHRA/EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and
(4) whether the unnamed party has in some way represented to the complainant that its
relationship with the complainant is to be through the named party.  Id.
       In Schafer, the court of appeals reaffirmed the Glus four-factor test, but appeared to focus
on whether the unnamed party received notice and when there is a shared commonality of interest
with the named party.  Schafer, 903 F.2d at 252; see also Goodman v. Lukens Steel Co., 777 F.2d
113, 127-28 (3d Cir. 1985), aff'd, 482 U.S. 656 (1987).

administrative remedies with respect to individual defendants if the body of the EEOC or PHRA

complaint at issue named the defendants and described the particular acts of discrimination

committed by the individual defendants.  See Kunwar, 135 F. Supp. 2d at 653-54 (finding that

individual defendants were sufficiently put on notice because plaintiff's EEOC charges

specifically referred to the individual defendants); Cardamone v. Murray Mgmt., No. 05-0679,

2005 U.S. Dist. LEXIS 40065, at *6-7 (M.D. Pa. Dec. 19, 2005) (same); Glickstein v.

Neshaminy Sch. Dist., No. 96- 6236, 1999 U.S. Dist. LEXIS 727, at *6 (E.D. Pa. Jan. 26, 1999)

(same); Dreisbach, 848 F. Supp. at 597 (same); Kinnally v. Bell of Pennsylvania, 748 F. Supp.

1136, 1140 (E.D. Pa. 1990) (same); but see Hajzus v. Peters Twp. Sch. Dist., No. 06-1401, 2007

U.S. Dist. LEXIS 20917, at *8-10 (W.D. Pa. Mar. 23, 2007) (dismissing allegations against

individual defendants where the plaintiff's PHRA complaint did not name those defendants as

respondents to the administrative action, or contain allegations that the individual defendants

aided and abetted in any discriminatory acts).

     In this case, it is clear that Mr. Huggins's PHRC complaint only named the School

District, and did not name Dr. Walker (or any other individual defendant), as a respondent in the

administrative action.[9]  However, Mr. Huggins's PHRC complaint undeniably referred to Dr.

---

[9] Defendants attached a copy of Mr. Huggins's PHRC complaint to their motion to dismiss.  (Def. Mot. Ex. B.)  The PHRC complaint attached to the motion is both a public record and a document central to Mr. Huggins's allegation that he exhausted his administrative remedies.  Accordingly, the Court may consider it in determining whether the exhaustion requirement has been met.  See Pension Ben. Guar. Corp., 998 F.2d at 1196 (stating that in deciding a motion to dismiss, a court may consider documents attached to the complaint, matters of public record, as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); Dixon v. Phila. Hous. Auth., 43 F. Supp. 2d 543, 545 (E.D. Pa.1999); Smith-Cook v. AMTRAK, No. 05-0880, 2005 U.S. Dist. LEXIS 27297, at *2 (E.D. Pa. Nov. 10, 2005); Marsh v. Sunoco, Inc., No. 06-2856, 2006 U.S. Dist. LEXIS 88887, at *7 n.1 (E.D. Pa. Dec. 6, 2006).

Walker by name numerous times, and stated allegations of discrimination against Dr. Walker that are largely identical to the allegations in his federal court Complaint.  That is, before the PHRC Mr. Huggins alleged that Dr. Walker called him the "boy with the trash bag" (Def. Mot. Dismiss Ex. B, Pl. PHRC Compl. ¶ 9), that she initiated a campaign to discredit him, and that she retaliated against him after he complained about her comments (Def. Mot. Dismiss Ex. B, Pl. PHRC Compl. ¶¶ 18-20).  Although Dr. Walker was not formally named as a respondent in Mr. Huggins's PHRC complaint, the Court finds that the specific allegations of Dr. Walkers' allegedly discriminatory and retaliatory conduct contained in the PHRC complaint were sufficient to put Dr. Walker on notice of Mr. Huggins's claims against her.[10]  See, e.g., Kunwar, 135 F. Supp. 2d at 653-54; Cardamone., 2005 U.S. Dist. LEXIS 40065, at *6-7.  Therefore, Mr. Huggins has exhausted his administrative remedies, and, as such, the motion to dismiss will be denied with respect to Mr. Huggins's PHRA claims against Dr. Walker.

---

[10] Defendants categorically state that "[t]he law is clear that Mr. Huggins was required to name the [individual defendants] in his PHRC Complaint in order to exhaust his administrative remedies against said individuals."  (Def. Mem. 23.)  In support of this "clear" proposition of law, Defendants rely entirely on the Hajzus case from the Western District of Pennsylvania.  The Hajzus court dismissed the complaint as to the individual defendants, all of whom were School District administrators and board members, because the plaintiff had failed to name them as respondents in his administrative complaint or state any allegations against them.  Hajzus, 2007 U.S. Dist. LEXIS 20917, at *8-10.  In Hajzus, the plaintiff attempted to sue school district officials in federal court, not because these officials had personally committed any wrongdoing or had any personal involvement in the events that led to the plaintiff's law suit, but solely due to their official status as board members or school district officials.  Id.

By contrast, while Hajzus may bear some superficial similarities to the instant case, e.g., both involve discrimination claims brought by school district employee against the employer school board, in this case Mr. Huggins referred to Dr. Walker in his PHRC complaint multiple times, and specifically alleged in that complaint that Dr. Walker discriminated and retaliated against him on the basis of his race.  Thus, this case is readily distinguishable from Hajzus.  The Defendants in this case cannot argue that Mr. Huggins's PHRC complaint did not state sufficient allegations against Dr. Walker such that she did not receive "notice" of his claims.

13

### III.   MR. HUGGINS'S SECTION 1983 CLAIMS

Defendants argue that Mr. Huggins's Complaint fails to state a § 1983 claim for relief. First, they argue that Count IV of the Complaint fails to identify a specific federal right. Secondly, Defendants argue that neither Count IV nor Count V alleges a policy or custom implemented by the School District that deprived Mr. Huggins of a federal right. Finally, they argue that the individual Defendants, of whom only Dr. Walker remains, are entitled to qualified immunity.

Section 1983 does not create any substantive rights, but provides an avenue of redress against state officials who have violated an individual's federal constitutional rights. Sameric Corp. of Del. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998) (citations omitted). To state a § 1983 cause of action, a plaintiff must allege (1) that the complained of conduct was done by a person acting under the color of state law,[11] and (2) that the conduct deprived the plaintiff of a constitutional or otherwise federally protected right. Id. There is no heightened pleading standard for a § 1983 claim. Leatherman v. Tarrant County, 507 U.S. 163, 168 (1993). Thus, a § 1983 complaint is only required to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Id. (quoting Fed. R. Civ. P. 8(a)(2)). Courts have previously inferred that a § 1983 claim involving racial discrimination, which does not explicitly identify the substantive federal right violated, is based on the Equal Protection Clause of the Fourteenth Amendment. See Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1079 (3d Cir. 1990) ("Although Bradley does not explicitly identify in the complaint or briefs the substantive basis

---

[11] Defendants do not contest that the School District is considered a "person" acting under state law. See Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978).

14

for his race discrimination claim under section 1983, that claim must be grounded on the equal protection clause of the Fourteenth Amendment."); see also Fortes v. Boyertown Area Sch. Dist., No. 06-0878, 2006 U.S. Dist. LEXIS 77039, at *22 n.14 (E.D. Pa. Oct. 20, 2006).

### A.    Mr. Huggins's Count IV-Section 1983 Claim

Both Counts IV and V of Mr. Huggins's Complaint raise claims under § 1983.  Count IV alleges that Defendants violated Mr. Huggins's rights under the Fourteenth Amendment, without specifically stating which rights were violated, while Count V specifically alleges that Mr. Huggins's Fourteenth Amendment rights to "equal protection" were violated.  In his brief, Mr. Huggins argues that his Complaint "alleges municipal liability principality [sic] on the basis of a failure to properly supervise and discipline."  (Pl. Resp. 8.)  He claims that the Complaint satisfies federal notice pleading requirements, and that reasonable discovery will permit him to "develop the specific factual underpinnings of the municipal liability claim."  (Pl. Resp. 8.)

Read liberally, Mr. Huggins's Complaint only states a claim under § 1983 based on a violation of his right to equal protection under the Fourteenth Amendment, which is specifically pleaded in Count V of the Complaint.  In other words, Mr. Huggins's Complaint does not state any grounds – other than equal protection – for § 1983 relief.  Thus, Courts IV and V of the Complaint are redundant.  Because Count V adequately captures Mr. Huggins's § 1983 race discrimination claim, Count IV will be dismissed.

### B.    Mr. Huggins's Count V-Section 1983 Claims Against the School District

While there is no heightened pleading standard for a § 1983 claim, "a [municipality] cannot be held liable unless a municipal policy or custom caused the constitutional injury." Leatherman, 507 U.S. at 166.  In Monell, the Supreme Court stated that a municipality cannot be

held vicariously liable under § 1983 based on the theory of respondeat superior.  436 U.S. at 691.

Instead, the claim requires that a municipal employee or official must have been acting pursuant

to a municipal policy or custom when the injury was inflicted.  Id. at 694; see also Berg v.

County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000).  To recover on a § 1983 claim against

the School District, Mr. Huggins must (1) identify a policy or custom that deprived him of a

federally protected right; (2) demonstrate that the School District, by its deliberate conduct, acted

as the "moving force" behind the alleged deprivation; and (3) establish a direct causal link

between the policy or custom and his injury.  Fortes, 2006 U.S. Dist. LEXIS 77039, at *23-24

(citing Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 404 (1997)).

A municipal policy is made "when a 'decision maker possessing final authority to

establish municipal policy with respect to the action' issues an official proclamation, policy, or

edict." Berg, 219 F.3d at 275 (quoting Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996)).

Meanwhile, customs are "practices of state officials . . . so permanent and well settled as to

virtually constitute law." Berg, 219 F.3d at 275-76 (quoting Kneipp, 95 F.3d at 1212).  A single

incident of a constitutional violation will not impose liability on a municipality unless "proof of

the incident includes proof that it was caused by an existing, unconstitutional municipal policy."

Fortes, 2006 U.S. Dist. LEXIS 77039, at *26 (quoting Oklahoma City v. Tuttle, 471 U.S. 808,

823-24 (1985)).  In Fortes, as an example, the plaintiff, a female African-American high school

teacher, brought a § 1983 claim for racial discrimination and retaliation against her supervisors

and employer.  The court held that because the plaintiff's only specific allegations were against

individuals and not the school district, the plaintiff failed to allege that the school district

deprived her of any protected right pursuant to a municipal policy or custom.  Fortes, 2006 U.S.

16

Dist. LEXIS 77039, at *26-27.

The Court finds that Count V of the Complaint must be dismissed as to the School District because Mr. Huggins failed to allege that he was injured as a result of any School District policy or custom.  As in Fortes, Mr. Huggins's Complaint here concentrates almost entirely on Dr. Walker's actions.  While Mr. Huggins's brief in response to Defendants' Motion to Dismiss states that "Defendant School District has tolerated a pattern and practice of discrimination and has failed to meaningfully investigate, and retaliated against plaintiff" (Pl.'s Resp. 6), Mr. Huggins's actual Complaint only states that the defendants were "engaged in actions in furtherance of the aims of a conspiracy that resulted in the deprivation of the aforesaid constitutional and statutory rights of plaintiff," (Compl. ¶ 62), and that Defendants' actions were "motivated by racial animus" (Compl. ¶ 64).  The Complaint does not make any reference at all (either expressly or implicitly) to a School District custom or policy, nor does it allege that Dr. Walker, in discriminating and/or retaliating against Mr. Huggins, was acting pursuant to a School District custom or policy (or even at the direction of any School District official).

Moreover, because Mr. Huggins has not identified any School District policy or custom, the Complaint also fails to claim that a School District policy or custom was the moving force behind his injury.  Not surprisingly, then, the Complaint also neglects to allege that any direct causal link existed between a policy or custom and his injury.[12]  Therefore, Mr. Huggins's § 1983

_____

[12] While a private litigant such as Mr. Huggins does not have access to Dr. Walker's disciplinary records, complaints and other internal School District material when filing a complaint, Mr. Huggins's Complaint makes no reference to any potential connection between the alleged racism and retaliation and a School District custom or policy.  While Mr. Huggins's brief correctly states that there is no heightened pleading standard for § 1983 claims, it fails to identify the facts in the Complaint that would support a viable § 1983 claim against the School District. If he seeks to claim that a School District policy or custom deprived him of a federally protected

claim, as alleged in Count V of his Complaint, will be dismissed without prejudice as to the School District.

### C.   Mr. Huggins's Count V-Section 1983 Claims Against the Dr. Walker

Defendants half-heartedly argue that Mr. Huggins has failed to properly allege claims under § 1983 against the individual defendants, including Dr. Walker, and, even if such claims are properly alleged, that the individual Defendants are entitled to qualified immunity.[13]

---

right, Mr. Huggins must identify such a policy or custom. Even a straight-forward, bare-bones notice pleading standard requires at least that much.

The Court notes that the Complaint does state that "Plaintiff asserts that the defendant employer and it [sic] upper management personnel have discriminated against him because of his race," and that "Defendants have not taken any steps to discipline defendant Walker but have retaliated against Mr. Huggins." (Compl ¶ 36, 47.) However, the Complaint does not: (1) provide any allegations of racism by anyone other than Defendant Walker; (2) allege that the School District failed to investigate Dr. Walker's comments to Mr. Huggins; (3) claim that Dr. Walker was a decision-maker possessing final authority to establish municipal policy; (4) name or identify as a defendant any School District official who directly supervised Dr. Walker; (5) allege that Dr. Walker was acting pursuant to any School District custom or policy; or (6) allege that a School District custom or policy was associated with the retaliation against Mr. Huggins.

[13] The Defendants invoke the doctrine of qualified immunity, which shields government officials performing discretionary functions from liability whenever "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." McGreevy v. Stroup, 413 F.3d 359, 364 (3d Cir. 2005) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Anderson v. Creighton, 483 U.S. 635, 640 (1987). Each defendant bears the burden of establishing entitlement to qualified immunity. Campbell v. Moore, No. 01-3474, 2004 WL 316081, at *4 (3d Cir. Jan. 14, 2004) (citing Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001)).

The threshold inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show a constitutional violation. Saucier, 533 U.S. at 201; Sherwood v. Muvihill, 113 F.3d 396, 401 (3d Cir. 1997). If the plaintiff cannot show a constitutional violation, the defendant is entitled to qualified immunity.

If, however, the plaintiff demonstrates that a constitutional injury occurred, the court must determine whether the constitutional right was "a clearly established one, about which a reasonable person would have known." McGreevy, 413 F.3d at 364 (quoting Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000)). "Clearly established" means "some but not precise factual correspondence between relevant precedents and the conduct at issue," although "officials need not predict the future course of constitutional law." McLaughlin v. Watson, 271 F.3d 566, 571

However, Defendants presented and briefed these arguments before the Court determined to dismiss the Plaintiffs' claims against the individual Defendants other than Dr. Walker, and their arguments address all of the individual Defendants generally, without focusing on Mr. Huggins's pointed allegations against Dr. Walker in particular.  In other words, Defendants generally argue that Mr. Huggins did not state specific allegations against any of the individual Defendants that would support a claim pursuant to § 1983, without acknowledging the multitude of allegations implicating Dr. Walker.  Defendants then summarily conclude that all individual Defendants, including Dr. Walker, are entitled to qualified immunity because Mr. Huggins failed to demonstrate that a constitutional injury occurred.

Because the Court will dismiss Mr. Huggins's claims against all individually-named defendants other than Dr. Walker, Defendants' argument with respect to the qualified immunity of those Defendants is moot.  Defendants' motion does not adequately discuss Mr. Huggins's allegations against Dr. Walker in particular, of which there are many, in the § 1983 context.  Defendants also do not discuss why, considering Dr. Walker's alleged conduct in this case, Dr. Walker should be entitled to qualified immunity.  Accepting Mr. Huggins's allegations as true, which the Court must do at this juncture, the Court cannot conclude that Dr. Walker's allegedly racist comments to Mr. Huggins, alleged initiation of a sexual harassment investigation against Mr. Huggins and otherwise retaliating against him for reporting those comments to supervisors,

---

(3d Cir. 2001).  The "salient question" is whether the law at the time of the incident gives a defendant "fair warning" that the defendant's conduct was unconstitutional.  Hope v. Pelzer, 536 U.S. 730, 741 (2002) (citing United States v. Lanier, 520 U.S. 259 (1997)).  "[I]n some cases 'a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful.'"  Rivas v. City of Passsaic, 365 F.3d 181, 200 (3d Cir. 2004) (quoting Hope, 536 U.S. at 741).

should be immune from suit.  Because the issues of Dr. Walker's liability under § 1983, and any

potential qualified immunity to which she may be entitled, have not been properly presented for

the Court's determination, Defendants' motion to dismiss the § 1983 claim against Dr. Walker

will be denied.

## IV.  THE HUGGINS'S STATE-LAW TORT CLAIMS

Plaintiffs concede that under the Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat.

Ann. § 8541,[14] the School District is immune from liability for all of the state-law tort claims

alleged their Complaint.  Therefore, Defendants' motion will be granted on Counts III, VI and

VII of the Complaint (the "malicious acts," intentional infliction of emotional distress, and loss

of consortium claims, respectively) as to the School District.

With respect to Dr. Walker, Defendants argue that (1) Mr. Huggins's cause of action for

"malicious acts" must be dismissed because Pennsylvania law does not recognize such a claim;

(2) Mr. Huggins's claim for intentional infliction of emotional distress (a) is preempted by

Pennsylvania Workers' Compensation Act and (b) even if not preempted, this claim must fail

because Mr. Huggins has failed to allege that he has suffered physical harm; and (3) Mrs.

Huggins' loss of consortium claim must be dismissed because it cannot survive on its own once

Mr. Huggins's other state-law tort claims are dismissed.  The Plaintiffs' response brief does not

address any of these defense arguments in detail.

---

[14] This statute provides:

Except as otherwise provided in this subchapter, no local agency shall be liable for
any damages on account of any injury to a person or property caused by any act of the
local agency or an employee thereof or any other person.

42 Pa. Cons. Stat. Ann. § 8541.

A.      Mr. Huggins's "Malicious Acts" Claim

Defendants argue that Count III must be dismissed because Pennsylvania law does not recognize a cause of action for "malicious acts."

Mr. Huggins's Complaint does not identify any statute or principle of common law that generates this claim.  Likewise, the Complaint does not specifically state which facts support the "malicious acts" claim.  Indeed, the Complaint merely incorporates the previously stated allegations, states that "[t]he actions of said defendants were malicious in that they furnished false information and did conceal facts to cover up the acts of discrimination against plaintiff" (Compl. ¶ 58), and states that Defendants' actions were "reckless" and showed a "disregard for the rights of plaintiff" (Compl. ¶ 57).

In his response to the defense motion Mr. Huggins describes this claim as one for "malicious prosecution" (Pl. Resp. 10), and argues that claims against individual state actors may survive when a plaintiff alleges, as he has done here, intentional tort and willful misconduct claims.  However, in order to prove malicious prosecution under Pennsylvania law, a plaintiff must prove that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." Donahue v. Gavin, 280 F.3d 371, 379 (3d Cir. 2002).

Mr. Huggins's purported "malicious prosecution" claim will be dismissed because he has not alleged any of these four requisite elements.  Indeed, while he alleged that Dr. Walker (and others) conspired to have him terminated from his job, he does not allege that anyone initiated a criminal proceeding against him.  At most, he claims that Defendants were wrong to

have terminated his employment, that he was vindicated by the arbitration ruling in his favor, and

that, therefore, Defendants' actions constitute a "malicious termination."  However, Mr. Huggins

cites no authority to support this type of claim under Pennsylvania common law (other than the

claim for "wrongful termination" under the PHRA, which, as discussed above, he has alleged,

and will be allowed to proceed).  Therefore, Defendants' motion will be granted as to Mr.

Huggins's "malicious acts" claim in Count III of the Complaint.

**B.**     **The Intentional Infliction of Emotional Distress Claim**

Defendants next argue that Mr. Huggins's claim for intentional infliction of emotional

distress must be dismissed because it is preempted by the Pennsylvania Workers' Compensation

Act, 77 Pa. Cons. Stat. Ann. §§ 1 et seq. (the "WCA").  Defendants also argue that, even if this

claim is not preempted, it should be dismissed because Mr. Huggins has failed to allege that he

has suffered physical harm, which is a  required element for such a claim under Pennsylvania

law.  Mr. Huggins does not respond to Defendants' rather intricate preemption argument, nor

does he address Defendants' argument that he failed to plead the essential elements of an

intentional infliction of emotional distress claim.

Under Pennsylvania law, in order to state such a claim, a plaintiff must demonstrate that

the defendant's conduct was: "(1) extreme and outrageous; (2) intentional or reckless; and (3)

caused severe emotional distress."  Hargraves v. City of Philadelphia, No. 05-4758, 2007 U.S.

Dist. LEXIS 31951, at *9 (E.D. Pa. April 26, 2007) (citing Dingle v. Centimark Corp., No. 00-

6418, 2002 U.S. Dist. LEXIS 9988, at *8 (E.D. Pa. June 3, 2002)) (dismissing plaintiff's

intentional infliction of emotional distress claim based on racial discrimination and retaliation).

To prevail on such a claim, "the conduct must be so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988) (quoting Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)).

Finally, Pennsylvania law requires that a plaintiff suffer "some type of resulting physical harm due to the defendant's outrageous conduct" in order to satisfy the "severe emotional distress" element of this claim. Reeves v. Middletown Ath. Ass'n, 866 A.2d 1115, 1122-23 (Pa. Super. Ct. 2004) (affirming dismissal of intentional infliction of emotional distress claim because plaintiff's complaint only alleged "serious and permanent physical injury" without specifying the type of injury) (citing Fewell v. Besner, 664 A.2d 577, 582 (Pa. Super. Ct. 1995) ("A plaintiff must also show physical injury or harm in order to sustain a cause of action for intentional infliction of emotional distress."); see also Fulton v. United States, 198 Fed. App'x 210, 215 (3d Cir. 2006) (non-precedential) ("In Pennsylvania, both intentional and negligent infliction of emotional distress requires a manifestation of physical impairment resulting from the distress.").

Defendants move to dismiss this claim because, they argue, it is barred by the exclusivity provisions of the Workers Compensation Act. Pennsylvania courts have made clear that this Act "provides the exclusive remedy for all employees' work-related injuries." McInerney v. Moyer Lumber & Hardware, Inc., 244 F. Supp. 2d 393, 400 (E.D. Pa. 2002) (citing 77 Pa. Cons. Stat. Ann. § 481(a)). However, the statute recognizes a limited exception, known as the "personal animus" or "third party attack" exception, which permits claims for "'employee injuries caused by the intentional conduct of third parties for reasons personal to the tortfeasor and not directed against him as an employee or because of his employment.'" Id. (quoting Durham Life Ins. Co.

23

v. Evans, 166 F.3d 139, 160 (3d Cir. 1999)); see also 77 Pa. Cons. Stat. Ann. § 481(a).  "The

'critical inquiry in determining the applicability of the third-party attack exception is whether the

attack was motivated by personal reasons, as opposed to generalized contempt or hatred, and was

sufficiently unrelated to the work situation so as not to arise out of the employment

relationship.'"  McInerney, 244 F. Supp. 2d at 400 (quoting Fugarino v. Univ. Servs., 123 F.

Supp. 2d 838, 844 (E.D. Pa. 2000).  For the purposes of a motion to dismiss, in order to plead a

valid cause of action which would fall within the personal animus exception, "an employee must

assert that his injuries are not work-related because he was injured by a co-worker for purely

personal reasons."  Wilkins v. ABF Freight Sys., Inc., No. 03-6610, 2005 U.S. Dist. LEXIS

20305, *28 (E.D. Pa. Sept. 15, 2005) (quoting Kohler v. McCrory Stores, 532 Pa. 130, 137-38

(Pa. 1992)) (holding that because plaintiff failed to assert that his injuries were not work related,

his intentional infliction of emotional distress claim was barred by the Workers Compensation

Act).

     Courts interpreting Pennsylvania law are split on the propriety of allowing this type of

claim for on-the-job harassment and discrimination.  See Durham Life Ins. Co. v. Evans, 166

F.3d 139, 160 (3d Cir. Pa. 1999) (comparing cases where courts have allowed such claims where

the injury arose from harassment "personal in nature and not part of the proper

employer-employee relationship," with cases where courts have found preemption in similar

circumstances).[15]  Our court of appeals has stated that it "understand[s] Pennsylvania law to

_____

     [15] Compare Hoy v. Angelone, 691 A.2d 476, 482 (Pa. Super. Ct. 1997) (finding that
plaintiff's sexual harassment claim was not preempted by the Workers Compensation Act
because the harassment perpetrated by the defendant was personal in nature and not directed at
the plaintiff due to her employment), aff'd on other grounds, 720 A.2d 745 (Pa. 1998);
Schweitzer v. Rockwell Int'l, 586 A.2d 383, 391 (Pa. Super. Ct. 1990) (finding that harassment

extend worker's compensation preemption to personal animosity that develops from work-related events."  Id. at 160 n.16.

Certainly, the Court acknowledges that the question of the alleged harasser's intent is inherently fact intensive, and that if an intentional infliction of emotional distress claim is properly pleaded, the issue of intent should be reserved for the trier of fact.  Williams v. U.S. Airways, Inc., No. 06-4797, 2007 U.S. Dist. LEXIS 65799, at *6-7 n.2 (E.D. Pa. Sept. 5, 2007). However, in this case, the Court is compelled to grant the Defendants' motion to dismiss this claim because Mr. Huggins has failed to plead the essential elements of an intentional infliction of emotional distress claim, which could warrant application of the "personal animus" exception. Mr. Huggins's allegations describe "bad behavior that [is] related to workplace issues," McInerney, 244 F. Supp. 2d at  401, and, as pleaded, cannot fit within the "personal animosity" exception.

---

was personal and not part of the legitimate employer/employee relationship), with  Winterberg v. Transportation Ins. Co., 72 F.3d 318, 322 (3d Cir. 1995) (finding that egregious misbehavior in handling a worker's compensation claim was preempted by the Act because Pennsylvania law has a broad intent to preempt common law torts "in matters arguably connected with work-related injuries."); Fleming v. Kramont Employer Royce Realty, Inc., No. 02-2703, 2002 U.S. Dist. LEXIS 15806, at *15-16 (E.D. Pa. Aug. 16, 2002) (personal animus exception does not apply where alleged discrimination included deprivation of necessary information, exclusion from essential meetings, public criticism, and differential treatment); DeWyer v. Temple Univ., No. 00-1665, 2001 U.S. Dist. LEXIS 1141, at *14 (E.D. Pa. Feb. 6, 2001) (concluding that the personal animus exception was probably inapplicable where the alleged discrimination occurred only at the workplace, and included work-related reprimands, suspensions, criticisms, and requiring plaintiff to park other than where she desired); Iacono v. Toll Bros., Inc., No. 01-4486, 2001 U.S. Dist. LEXIS 21115, at *2 (E.D. Pa. Dec. 19, 2001) (personal animus exception inapplicable because all of the allegedly offensive conduct occurred at work and arose out of the employment relationship);  Hicks v. Arthur, 843 F. Supp. 949, 958 (E.D. Pa. 1994) (finding that claim was preempted by the Act because harassment of a group of black employees did not stem from "personal animosity," and any African-American individual would have been discriminated against).

In this case, Mr. Huggins's claim incorporates the preceding paragraphs of the Complaint, alleges that he suffered certain injuries as a result of Defendants' actions (Compl. ¶ 66), and that Defendants knew or should have know that their actions would have caused him to suffer emotional distress.  However, Mr. Huggins did <u>not</u> allege that Dr. Walker acted out of personal animosity, that any such animosity developed from non-work-related events, that any pertinent events occurred outside of the employer/employee relationship, or that any events occurred away from school grounds.  To the contrary, the events described in Mr. Huggins's Complaint, including the allegations against Dr. Walker, are all work-related.  Mr. Huggins alleges that Dr. Walker manufactured harassment allegations against him, and used the machinery of the School District to investigate him, leading to his eventual termination.  He essentially alleges that Dr. Walker abused her supervisory position in the workplace, which resulted in detrimental changes in the terms and conditions of his employment, including his termination.  None of these allegations, as pleaded, permit the inference that Dr. Walker's actions were personal in nature.

Moreover, Defendants' motion must be granted because the Complaint fails to plead the elements of an intentional infliction of emotional distress claim, namely, that Dr. Walker's conduct was "extreme or outrageous," or that Mr. Huggins suffered severe emotional distress or physical injury as a result of that conduct.[16]  Therefore, this claim must be dismissed without

---

[16] Mr. Huggins alleged that Defendants' actions caused him to suffer "humiliation, shock, and emotional distress, and pain and suffering."  (Compl. ¶ 66.).  Other than this boilerplate language, Mr. Huggins does not allege what type of "pain and suffering" he suffered, or when he suffered it in relation to the Defendants' actions.  He does not elaborate on the "severity" of his injuries, or describe the nature of his injuries in any detail.  Moreover, he does not allege that he suffered any physical injury, harm or impairment (other than "pain and suffering") as a result of Defendants' conduct, nor has he alleged "a direct physical ailment that has resulted from the distress suffered" due to Defendants' actions.  <u>Fulton</u>, 198 Fed. App'x at 215.

prejudice to Mr. Huggins to re-plead in the event he can in good faith present a cognizable claim.

      **C.**      **Monica Huggins's Loss of Consortium Claim**

      Defendants move to dismiss Mrs. Huggins' loss of consortium claim because there remains no valid tort claim in this case, and, Defendants argue, a loss of consortium claim cannot survive on its own. Plaintiffs do not rebut this argument.

      Defendants' argument accurately states Pennsylvania law on this issue.[17]  Because Mr. Huggins's torts claims will be dismissed and no tort claims will survive at this time, no claim for loss of consortium may remain.  Accordingly, Defendants' motion will be granted as to this Count, and Mrs. Huggins's loss of consortium claim will be dismissed without prejudice.

**CONCLUSION**

      For the reasons discussed above, Defendants' Motion to Dismiss will be granted in part and denied in part as set out in the accompanying Order.  In sum, Mr. Huggins's remaining claims are as follows: Count I against the School District; Count II against the School District and Dr. Walker; and Count V against Dr. Walker.  All other claims will be dismissed.

      An Order consistent with this Memorandum follows.

---

[17] "Under Pennsylvania law, loss of consortium derives only from the injured spouse's right to recover in tort . . . ."  McInerney, 244 F. Supp. 2d at 402 (emphasis added) (citing Little v. Jarvis, 280 A.2d 617, 620 (Pa. Super. Ct. 1971)).  There is no right to recover for loss of consortium in connection with a spouse's claims under Title VII, the PHRA, or other civil rights claims.  See McKinnon v. Gonzales, No. 07-1694, 2008 U.S. Dist. LEXIS 7325, at *6-7 (D.N.J. Jan. 30, 2008); McInerney, 244 F. Supp. 2d at 402; Wakshul v. Philadelphia, 998 F. Supp. 585, 590 (E.D. Pa. 1998); Quitmeyer v. SEPTA, 740 F. Supp. 363, 370 (E.D. Pa. 1990)).

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KENNETH HUGGINS, SR., et al.,** | : | **CIVIL ACTION** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **COATESVILLE AREA** | : | |
| **SCHOOL DISTRICT, et al.,** | : | |
| **Defendants** | : | **NO. 07-4917** |

## O R D E R

    **AND NOW**, this __ day of August, 2008, upon consideration of Defendants' Motion to Dismiss (Docket No.10), and Plaintiffs' response thereto (Docket No. 12), for the reasons discussed in the accompanying Memorandum, **IT IS ORDERED** that the Motion is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.    Plaintiffs' Complaint is **DISMISSED** in its entirety as to Defendants Richard Como, Frank D'Angelo, and Pedro Quinones (misnamed in the Complaint as "Pedro Quiles").

2.    Count I is **DISMISSED** as to Defendant Maria Walker.

3.    Counts III, VI and VII are **DISMISSED** as to Defendant Coatesville Area School District, and **DISMISSED WITHOUT PREJUDICE** as to Defendant Marie Walker.

4.    Count IV is **DISMISSED** as to all Defendants.

5.    Count V is **DISMISSED WITHOUT PREJUDICE** as to Defendant Coatesville Area School District.

6.    The Clerk of Court shall **TERMINATE** Defendants Richard Como, Frank D'Angelo, and Pedro Quinones (misnamed in the Complaint as "Pedro Quiles") as defendants in this case, and shall **TERMINATE** Monica Huggins as a plaintiff in this case.

7.      Defendants Dr. Walker and the School District shall file with the Court and serve on the Plaintiffs an Answer to the Complaint within ten (10) days of the date of entry of this Order.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

2